## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

ANDREW D. SHUSTERIC,

      Debtor.

Case No. 6:05-bk-05915-ABB
Chapter 7

_____/

PHILLIPS, MILLE & COSTABILE
CO., L.P.A.,

      Plaintiff,

Adv. Pro. No. 6:05-ap-00216-ABB

vs.

ANDREW SHUSTERIC,

      Defendant.

_____/

## MEMORANDUM OPINION

     This matter came before the Court on the Motion for Judgment by Default and the supporting Affidavits (Doc. Nos. 14, 15, 16, 24) (collectively, the "Motion")[1] filed by Phillips, Mille & Costabile Co., L.P.A., the Plaintiff herein ("Plaintiff") seeking summary judgment on its 11 U.S.C. Section 523 non-dischargeability Complaint (Doc. No. 1) ("Complaint") against Andrew D. Shusteric, the Debtor herein ("Debtor").  A final evidentiary hearing was held on February 26, 2007 at which counsel for the Plaintiff appeared.  The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live argument, and being otherwise fully advised in the premises.

---

[1] The title of the Plaintiff's Motion seeks judgment by default but the substance of the Motion seeks summary judgment on the Complaint.  The Motion will be treated as a motion for summary judgment.

## FINDINGS OF FACT

### *Background Facts*

The Debtor[2] filed an individual Chapter 7 case on May 25, 2005 ("Petition Date"). He lists no real property in his Schedules and lists the Plaintiff in Schedule F as a creditor holding an unsecured nonpriority claim of $26,107.00.[3] The debt is not listed as contingent, unliquidated, or disputed. The Debtor received a discharge on December 10, 2005.[4]

The Plaintiff is a law firm located in Middleburg Heights, Ohio. The Debtor engaged the Plaintiff prepetition in 2001 to represent him in connection with various business matters. The Plaintiff performed services for the Debtor and legal fees and costs were incurred. The parties, to address the Debtor's unpaid fees and costs, structured an extension of the debt through two promissory notes secured by mortgages on real property located at 280 Copperfield Court, Painesville, Ohio 44077 ("the Property").[5] The Debtor represented to the Plaintiff he owned the Property, it was unencumbered by liens, and he had authority to grant the Plaintiff a lien on the Property. The Plaintiff relied on the Debtor's representations in granting the extension of the debt.

The Debtor executed a Mortgage Note on November 29, 2002 ("Note I") pursuant to which he agreed to pay the Plaintiff $14,495.06 during a thirty-six month period with the "entire amount of principal and interest due and payable on or before December 1,

---

[2] The Debtor discloses in the Petition "FDBA Exterior Concepts" as another name used by him prepetition.
[3] Main Case No. Doc. No. 1.
[4] Main Case Doc. No. 8.
[5] The Property's legal description reads: "Situated in the Township of Painesville, County of Lake and State of Ohio: and known as being Sublot No. 34 in the Hemlock Heights No. 5 Subdivision of part of Original Painesville Township Lot No. 17, Tract 1, as shown by the recorded Plat in Volume U of Maps, Page 33 of Lake County Records, as appears by said plat."

2004."[6]  Paragraph 4 of Note I provides the principal amount was due by the earlier of December 1, 2004 or the sale, transfer, or refinance of the Property.  Note I sets forth in Paragraph 1 the Property as the Debtor's address.

The Debtor executed an Open-End Mortgage on November 29, 2002 ("Mortgage I")[7] granting the Plaintiff a lien on the Property to secure payment of Note I.[8]  The Plaintiff recorded Mortgage I on December 3, 2002 with the Lake County Ohio Recorder as File No. 2002R062555.

The Plaintiff granted the Debtor a second extension of debt through a Mortgage Note for $5,754.11 executed by the Debtor on October 16, 2003 ("Note II" and collectively with Note I as the "Notes")).[9]  The Debtor agreed to pay said amount to the Plaintiff within a thirteen-month period with the "entire amount of principal and interest due and payable on or before December 1, 2004."[10]  Payment in full of the principal amount would come due upon the earlier of December 1, 2004 or the sale, transfer, or refinancing of the Property.   Note II sets forth the Property as the Debtor's address.

---

[6] Plaintiff's Exh. 1 and Doc. No. 11.  The amount due pursuant to Note I is unclear.  Note I references $15,000.00 as the debt obligation (*see* top of Note I and Paragraph 5).  Paragraph 1, however, sets forth the debt obligation is $14,495.06 and "[s]aid amount shall be adjusted for the actual amount of professional legal fees and costs due from the Maker to the Payee through the term of this Note."  Note I is inconsistent regarding interest. Paragraph 1 states ". . . with the entire amount of principal and interest due and payable on or before December 1, 2004," but Note I does not contain an interest provision.  The Plaintiff may not be entitled to interest on the debt obligation of Note I due to the absence of an interest terms provision.  The issue of interest entitlement is not before the Court.

[7] Plaintiff's Exh. 2 and Doc. No. 11.

[8] Mortgage I also contains inconsistencies as to the debt obligation: "This mortgage is given on the statutory condition to secure the payment of FIFTEEN THOUSAND AND 00/100 DOLLARS ($15,000.00) with interest as provided in the note of even date . . . with additional advances as provided below . . . The maximum amount of indebtedness, (which shall consist of unpaid balances of fees owed for legal services rendered both before and after this mortgage is delivered to the recorded for record), exclusive of interest thereon, which may be outstanding at any time is $20,000.00."

[9] Note II, similarly to Note I, references interest, but contains no interest provision.  The Plaintiff may not be entitled to interest on the debt obligation of Note II due to the absence of an interest terms provision.  The issue of interest entitlement is not before the Court.

[10] Plaintiff's Exh. 1 and Doc. No. 11.

The Debtor executed an Open-End Mortgage on October 16, 2003 ("Mortgage II" and collectively with Mortgage I, the "Mortgages")[11] granting the Plaintiff a lien on the Property to secure payment of Note II.  The Plaintiff recorded Mortgage II on October 20, 2003 with the Lake County Ohio Recorder as File No. 200#R066811.

The Debtor's execution of the Notes and Mortgages extended the underlying, pre-existing debt for the professional fees and costs incurred by the Plaintiff in its representation of the Debtor.  The Plaintiff granted the Debtor a reprieve through the Notes and Mortgages extending the time period for him to pay the debt for fees and costs. The instruments constitute extensions of credit.  The Debtor subsequently defaulted on the Notes.

The Plaintiff, prior to granting the extensions, conducted due diligence to confirm the Debtor owned the Property.  The Plaintiff obtained through Real Estate Title a copy of a recorded deed conveying the Property to the Debtor as the owner and it reviewed the Property's chain of title on the Lake County real estate website.[12]  The Plaintiff did not conduct a formal title search of the Property and it did not obtain title insurance.[13]

The Debtor asserted his ownership of the Property verbally to members of the law firm and within the Notes and Mortgages.  All correspondence sent by the Plaintiff to the Debtor during the course of their relationship was sent to the Property.[14]  All documents filed with the Lake County Juvenile Court by the Plaintiff in the course of its representation of the Debtor reflect the Property as the Debtor's residence.  The Debtor's

---

[11] Plaintiff's Ex. 4 and Doc. No. 11.
[12] Doc. No. 24.
[13] Doc. No. 24.
[14] Doc. No. 24.

testimony at trial during the course of the representation confirmed the Property was his residence.

The Plaintiff's practice areas include family law, litigation, and municipal law. Its attorneys are not actively involved in the practice of real estate law. Their involvement with real estate law is limited to the preparation of deeds incident to domestic relations or estate planning matters and they, from time to time, prepare purchase agreements.[15]

The Debtor did not own the Property when he executed the Notes and Mortgages. He, unbeknownst to the Plaintiff and not reflected in the county land records, had transferred the Property to a family member just days prior to executing the Notes and Mortgages. He had no ownership interest in the Property and no ability or authority to encumber the Property when he executed the debt extension documents.

The Debtor obtained the extensions by making false representations to the Plaintiff. He falsely represented he owned the Property and had the ability and authority to encumber the Property with the Mortgages. His false representations were material and were made by him knowingly and fraudulently. He made the false representations with the intent to deceive the Plaintiff to induce it to grant extensions of the debt for unpaid legal fees and costs.

The Plaintiff relied on the Debtor's representations in granting the extensions. The Plaintiff's reliance was justified and it relied on the representations to its detriment. The Plaintiff has suffered damages as result of its reliance on the representations. Its damages include the unpaid balances of the Notes and attorneys' fees and costs.

---

[15] Doc. No. 24.

### *Adversary Proceeding Events*

The Plaintiff filed its Complaint against the Debtor on August 22, 2005 seeking to have a debt of $25,744.61 deemed nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. The Court, after being informed by the Debtor he is ill and has relocated to Ohio, afforded him numerous opportunities to participate in this adversary proceeding. Response deadlines were extended twice and the hearings were continued to accommodate the Debtor. The Debtor did not file a response to the Complaint or the Motion and did not appear at any hearings. He was unresponsive to the Court's attempts to reach him at his telephone number.

He has repeatedly failed to participate, follow Court procedures and Order, and has been deceptive and inconsistent in his communications with the Court.[16] The Debtor did not file any document in his bankruptcy case setting forth his new service address as he is required to do pursuant to the filing procedures as explained to him. The Debtor provided an address for service via facsimile after being advised as to the policies and procedures regarding the submission of papers to the Court. His submission did not conform to proper policy as advised.

The Debtor is in default. He failed to answer the Complaint, respond to the Motion, or present any defense. No material facts are in dispute. The Plaintiff has established the Notes and Mortgages constitute extensions of credit. The Plaintiff has

---

[16] The Debtor filed two letters (Doc. Nos. 26 & 37) with the Court seeking a continuance. An Order was entered on December 21, 2006 (Doc. No. 32) extending the deadlines for the Debtor to respond to the Complaint and the Motion to January 5, 2007. The Debtor did not comply with the December 21, 2006 Order. The Court further extended the Debtor's response period to February 9, 2007 through the Order entered on January 11, 2007 (Doc. No. 39).[16] The Order set a final evidentiary hearing for February 26, 2007.[16] The Debtor did not comply with the January 11, 2007 Order and did not appear for the evidentiary hearing.

established by a preponderance of the evidence each of the necessary factual elements for finding the debt owed to the Plaintiff by the Debtor is nondischargeable.[17]

## CONCLUSIONS OF LAW

The Plaintiff challenges the dischargeability of the debt pursuant to Section 523(a)(2)(A) of the Bankruptcy Code which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. rev. 2005).

The threshold issue is whether this adversary proceeding involves a "debt" that falls within the ambit of Section 523(a)(2). The Plaintiff seeks to have a debt of $25,744.61 deemed nondischarageable. The Debtor owed a *preexisting* debt to the Plaintiff when he executed Note I and Mortgage I. The Plaintiff has not delineated whether the entire amount of $25,744.61 constitutes original debt preexisting the

---

[17] The precise amount of the debt owed to the Plaintiff by the Debtor cannot be determined. The Plaintiff did not introduce evidence as to how the debt amount of $25,744.61 in the Complaint was calculated and, as discussed *supra*, the debt instruments have internal inconsistencies regarding the principal debt amount.

execution of Note I and Mortgage I, or whether a portion constitutes debt incurred after the Debtor executed those instruments.[18] There is no evidence indicating the Debtor incurred the original debt through fraud.

Section 523 encompasses liabilities incurred through extensions, renewals, or refinancing of credits. This proceeding is within the purview of Section 523(a)(2) if the Notes and Mortgages constitute the extension, renewal, or refinancing of the Debtor's original debt owed to the Plaintiff.

The Fourth Circuit Court of Appeals addressed in <u>Foley & Lardner v. Biondo (In re Biondo)</u>, 180 F.3d 126, 131 (4th Cir. 1999) what constitutes an extension, renewal, refinance of debt pursuant to Section 523(a)(2) in connection with unpaid legal fees. Biondo, a client of Foley & Lardner, accrued an outstanding fee balance of more than $100,000.00 and the firm and the client compromised the debt in a settlement agreement. The client filed for bankruptcy protection and the firm sought to have a debt deemed nondischargeable pursuant to Section 523(a)(2)(A). There was no dispute the client's original debt was incurred through the provision of legal services and the issue on appeal was whether the settlement agreement constituted and its ancillary agreements were extensions, renewals, or refinancings of credit.

The Fourth Circuit Court of Appeals looked to the common definitions of extension, renewal, and refinance since the Bankruptcy Code does not define these terms:

---

[18] Note I and Mortgage I reflect the Plaintiff contemplated the incurring of debt through continued legal representation after execution of the Notes. Paragraph 1 of Note I sets forth a debt obligation of $14,495.06 and provides "[s]aid amount shall be adjusted for the actual amount of professional legal fees and costs due from the Maker to the Payee through the term of this Note." Mortgage I provides (*emphasis added*): "This mortgage is given on the statutory condition to secure the payment of FIFTEEN THOUSAND AND 00/100 DOLLARS ($15,000.00) with interest as provided in the note of even date . . . *with additional advances as provided below* . . . The maximum amount of indebtedness, (which shall consist of unpaid balances of fees owed for legal services rendered both before and after this mortgage is delivered to the recorded for record), exclusive of interest thereon, which may be outstanding at any time is $20,000.00."

"The Bankruptcy Code does not guide us to a unique interpretation of these terms; therefore, we will turn to their common understanding." (*citing* Union Pac. R.R. Co. v. Hall, 91 U.S. 343, 347, 23 L.Ed 428 (1875)). The Court, after reviewing various cases and Black's Law Dictionary,[19] held:

> Our definition focuses on an 'extension' of credit as an autonomous transaction that results in the lengthening of a debtor-creditor relationship . . . In other words, despite the fact that a debt may already be due, the creditor grants a reprieve to the debtor . . . An extension of credit is analogous to the class forbearance granted by a creditor in relation to a matured debt. Extensions of credit under § 523(a)(2) are thus properly viewed as merely an agreed enlargement of the time allowed for payment . . . The terms collectively used in § 523(a)(2) are thus broad enough to account for virtually every type of secondary debt transaction.

Biondo, 180 F.3d at 132, 133. The Notes and Mortgages enlarged the time allowed for the Debtor to pay the debt owed to the Plaintiff incurred through its provision of legal services. The Notes and Mortgages constitute extensions of creditor pursuant to Section 523(a)(2).[20]

Further support for the conclusion the Notes and Mortgages constitute extensions of credit is found in In re Marx, 138 B.R. 633, 636 (Bankr. M.D. Fla. 1992) in which the Bankruptcy Court held credit initially extended under nonfraudulent circumstances, but subsequently renewed or refinanced through fraud, is nondischargeable. The Tenth Circuit Court of Appeals stated: ". . . [T]he Bankruptcy Code protects the creditor who is

---

[19] Black's Law Dictionary defines "extension" as "a period of additional time to take an action, make a decision, accept an offer, or complete a task" or "the continuation of the same contract for a specified period." Black's Law Dictionary 622 (8th ed. 1999).

[20] The Fourth Circuit Court of Appeals found the settlement agreement between the law firm and its client constituted a refinancing transaction within the purview of Section 523(a)(2) on the basis the agreement "effectively substituted a new debt obligation for the previously existing debt and thus satisfied the definition of a refinancing of credit." Biondo, 180 F.3d at 133. In reaching this conclusion, the Court recognized the instruments did more than simply allow the client to pay at a later date; they temporarily reduced the amount due, added interest, contained a confession of judgment clause, assigned the law firm an interest in certain partnerships, and required the firm to dismiss certain suits. There is insufficient evidence to determine whether the Notes and Mortgages constitute a refinancing transaction within the purview of Section 523(a)(2).

deceived into forbearing collection efforts." Id. (citing In re Baldwin, 578 F.2d 293, 295 (10th Cir. 1978)).

### Section 523(a)(2)(A) Elements

Courts have required a plaintiff to establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). A plaintiff must establish: (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. Id.; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996). "A plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part" to prevail in a Section 523(a)(2)(A) action. In re DeLisle, 125 B.R. 310, 312 (Bankr. M.D. Fla. 1991). The objecting party must establish each of the four elements of fraud by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000); Fed. R. Bankr. P. 4005 (2005).

The false representation giving rise to the claim must have been knowingly and fraudulently made to except a debt from discharge. 4 COLLIER ON BANKRUPTCY ¶523.08[1][d], at 523-44.9. A plaintiff must establish the debtor intended to deceive the plaintiff through the false representation. In re Stevens, No. 02-8501-8G7, Adv. No. 8:02-ap-589-PMG, 2003 Bankr. LEXIS 1950, at 14 (Bankr. M.D. Fla. September 12, 2003). Intent is a subjective issue requiring the court to "examine the totality of the

Debtor's actions to determine if [he] possessed the requisite intent to deceive the Plaintiffs." Id. (quoting In re Copeland, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003)).

The reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-5, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (establishing that § 523(a)(2)(A) requires justifiable reliance rather than the former standard of reasonable reliance). Whether such reliance was justified is determined by a subjective test. In re Vann, 67 F.3d at 281. "Justifiable reliance is gauged by an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quoting W. PAGE KEETON, PROSSER & KEETON ON TORTS §108, at 751 (5th ed. 1984) (emphasis added)).

> The Supreme Court emphasized justifiable reliance involves a minimal threshold:
>
> [T]he illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if 'he could have walk[ed] across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage.

Field, 516 U.S. at 70 (*quoting* Restatement (Second) of Torts § 540 (1976)). The Plaintiff met the justifiable reliance standard when it relied on the Debtor's assertions of his ownership of the Property and his authority to encumber it. Field, 516 U.S. at 70; Biondo, 180 F.3d at 135 (finding Foley & Lardner's reliance upon clients' representations they owned partnership interests and could assign them was justified). The Plaintiff did not need to conduct any due diligence.

A plaintiff, as the fourth and final element, must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. In re Stevens, 2003 Bankr. LEXIS 1950, at 18-9.

The Plaintiff has established by a preponderance of the evidence the elements for non-dischargeability of the debt pursuant to Section 523(a)(2)(A). The Plaintiff established the Debtor falsely represented he owned the Property and had the ability and authority to encumber the Property with the Mortgages. He made the representations knowingly and fraudulently with the intent to deceive the Plaintiff to induce it to grant extensions of the debt for unpaid legal fees and costs. The Debtor's fraudulent misrepresentations expressly induced the Plaintiff to extend credit to the Debtor through the Notes and Mortgages. The Plaintiff justifiably relied on the Debtor's representations in granting the extensions. The Plaintiff has suffered damages as result of its reliance on the Debtor's fraudulent misrepresentations.

### Summary Judgment

Granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

There are no material facts in dispute and the Plaintiff is entitled to judgment as a matter of law. The Debtor's liability to the Plaintiff is nondischargeable pursuant to 11

U.S.C. Section 523(a)(2)(A). Judgment shall be entered in favor of the Plaintiff and against the Debtor.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 26th day of March, 2007.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge

13